IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NICOLE HUTCHESON and RUTH BOATNER, | § § § § § | |
| *Plaintiffs* | § § | |
| V. | § § | CIVIL ACTION NO. 3:17-CV-____-_ |
| DALLAS COUNTY, TEXAS, FERNANDO REYES, TRENTON SMITH, BETTY STEVENS, and ELVIN HAYES | § § § § § § § | JURY TRIAL DEMANDED |
| *Defendants* | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**I. PARTIES**

1.01   Plaintiff Nicole Hutcheson is an individual who resides in Tarrant County, Texas.

1.02   Plaintiff Ruth Boatner is an individual who resides in Dallas County, Texas.

1.03   Defendant Dallas County, Texas is a political subdivision of the State of Texas and can be served through its County Judge, Clay Jenkins, at 411 Elm Street, in the City of Dallas, Dallas County, Texas.

1.04   Defendant Fernando Reyes is an individual who upon information and belief resides in Dallas County, Texas, no citation is requested at this time.

1.05   Defendant Trenton Smith is an individual who upon information and belief resides in Dallas County, Texas, no citation is requested at this time.

1.06    Defendant Betty Stevens is an individual who upon information and belief resides in Dallas County, Texas, no citation is requested at this time.

1.07    Defendant Elvin Hayes is an individual who upon information and belief resides in Dallas County, Texas, no citation is requested at this time.

## II.  JURISDICTION

2.01    This Court has jurisdiction over the subject matter of this dispute because it arises under federal law.

2.02    This Court has jurisdiction over the defendants in this dispute because all are residents of this district and division and can be served with process at the addresses listed above.

2.03    This Court also has jurisdiction over the defendants in this dispute under Texas's long-arm statute because each of the defendants committed torts within this district and division.

## III.  VENUE

3.01    Venue is proper in this Court because the events complained of occurred in this District and Division.

## IV. FACTS

**A.    Events of August 1, 2015**

4.01    Shortly before 10:30 a.m. on Saturday, August 1, 2015, Joseph Hutcheson entered the front lobby of the Lew Sterrett Justice Center.

4.02    The Lew Sterrett Justice Center is owned and operated by Defendant Dallas County, Texas.

- 3 -

4.03   The Lew Sterrett Justice Center is commonly known as the "Dallas County Jail."

4.04   Mr. Hutcheson entered the lobby wearing a ball cap, Dallas Cowboys jersey, and shorts.

4.05   Mr. Hutcheson appeared to be panicked when he entered the lobby.

4.06   Mr. Hutcheson appeared to be physically unstable when he entered the lobby.

4.07   It was clear that Mr. Hutcheson had nothing in his hands when he entered the lobby.

4.08   It was clear that Mr. Hutcheson was not armed with any type of weapon when he entered the lobby.

4.10   Mr. Hutcheson did not make any threats to anyone after he entered the lobby.

4.11   Immediately after Mr. Hutcheson entered the lobby, he slowed his pace, walked towards a single row of benches along the wall, and sat down.

4.12   As Mr. Hutcheson entered the lobby, he stated to numerous individuals, "It's okay," "I'm not going to hurt anyone," and "I need some help."

4.12   Several of the individuals to whom Mr. Hutcheson spoke directed him towards Defendant Hayes, a Detention Security Officer who was present in the lobby.

4.13   Defendant Hayes approached Mr. Hutcheson and engaged him in conversation.

4.13   Defendant Reyes, a Dallas County Sherriff's Deputy, was working in the lobby's information booth when Mr. Hutcheson entered the lobby.

4.14    After seeing Mr. Hutcheson speaking to Defendant Hayes, Defendant Reyes left the information booth walked towards them.

4.15    Mr. Hutcheson calmly walked away from both Defendants Reyes and Hayes and re-took a seat on the bench.

4.16    Defendants Reyes and Hayes followed Mr. Hutcheson and began to talk to him as he was seated.

4.17    While seated, Mr. Hutcheson showed Defendants Reyes and Hayes that he had nothing in his hands and no weapons in his pockets.

4.18    After approximately thirty seconds, Mr. Hutcheson stood up and began to follow Defendant Reyes towards the information booth.

4.19    Following the conversation with Mr. Hutcheson and Defendant Reyes, Defendant Hayes left the building.

4.20    Following the conversation with Mr. Hutcheson and Defendant Hayes, Defendant Reyes returned to the information booth.

4.21    Following the conversation with Defendant Reyes and Defendant Hayes, Mr. Hutcheson began to pace around the lobby.

4.22    While pacing around the lobby, Mr. Hutcheson did not make physical contact with anyone.

4.23    While pacing around the lobby, Mr. Hutcheson did not say anything to anyone.

4.24    While pacing around the lobby, Mr. Hutcheson repeatedly grabbed his abdomen.

4.25   While pacing around the lobby, Mr. Hutcheson appeared physically unstable.

4.26   While pacing around the lobby, Mr. Hutcheson appeared to be in a state of distress.

4.27   While pacing around the lobby, Mr. Hutcheson exhibited signs of "excited delirium."

4.28   Dallas County Sheriff's Deputies are supposed to be trained on how to recognize and treat individuals exhibiting signs of "excited delirium."

4.29   Dallas County Detention Security Officers are supposed to be trained on how to recognize and treat individuals exhibiting signs of "excited delirium."

4.30   While he was pacing around the lobby, neither Defendant Stevens nor Defendant Smith—both of whom were working as Detention Security Officers in the lobby—appeared concerned with Mr. Hutcheson's behavior.

4.31   Upon seeing Mr. Hutcheson pacing in the lobby, Defendant Reyes quickly left the information booth and directly approached Mr. Hutcheson.

4.32   Defendant Reyes did not make verbal contact with Defendant Stevens or Defendant Smith before approaching Mr. Hutcheson.

4.33   Immediately upon approaching Mr. Hutcheson, Defendant Reyes grabbed Mr. Hutcheson by the arms and torso and attempted to force Mr. Hutcheson onto the ground.

4.34   Mr. Hutcheson turned away from Defendant Reyes with his arms extended, his hands open, and his palms facing down.

4.35   Defendant Reyes's grabbed Mr. Hutcheson from behind forcing Mr. Hutcheson's feet out from under him, and Mr. Hutcheson landed on his buttocks on the lobby floor.

4.36   Once Mr. Hutcheson's buttocks were on the floor, Defendant Reyes attempted to turn Mr. Hutcheson over so that he was in a prone position (face down) on the lobby floor.

4.37   After Defendant Reyes turned Mr. Hutcheson to a prone position, Defendants Stevens and Smith ran over to assist Defendant Reyes.

4.38   Defendant Smith placed his knee on Mr. Hutcheson's shoulder and neck area while leaning forward and placing pressure on Mr. Hutcheson.

4.39   Defendant Reyes attempted to place Mr. Hutcheson in handcuffs.

4.40   To assist Defendant Reyes, Defendant Stevens placed her knee on Mr. Hutcheson's back.

4.41   While Defendants Reyes, Smith, and Stevens were engaged in the above, Mr. Hutcheson was writing in pain.

4.42   While Defendants Reyes, Smith, and Stevens were engaged in the above, Mr. Hutcheson was screaming in pain.

4.43   After Defendants Reyes, Smith, and Stevens handcuffed Mr. Hutcheson, they allowed him to remain lying on the floor of the lobby in a prone position for more than two minutes.

4.44	While Mr. Hutcheson was handcuffed and lying on the floor of the lobby in a prone position, Defendant Hayes returned to the lobby and immediately stepped on Mr. Hutcheson's feet.

4.45	Defendant Hayes then grabbed Mr. Hutcheson's feet, crossed Mr. Hutcheson's legs, pushed Mr. Hutcheson's feet towards Mr. Hutcheson's buttocks, and held them there for approximately thirty seconds.

4.46	After Defendant Hayes released Mr. Hutcheson's legs, Mr. Hutcheson does not move again by his own volition.

4.47	Defendants placed Mr. Hutcheson into a seated position for nearly ninety seconds after Defendant Hayes released him.

4.48	After Defendants placed Mr. Hutcheson in a seated position, they had to support him to keep him from falling over.

4.49	While Mr. Hutcheson was in a seated position, Defendants tapped and nudged Mr. Hutcheson's shoulder, but obtained no visible or audible response.

4.50	Four minutes after Defendants placed Mr. Hutcheson in a seated position, a nurse arrived in the lobby, but he did not administer first aid nor perform CPR.

4.51	CPR was not administered to Mr. Hutcheson for more than seven minutes after Defendant Hayes released him.

4.52	Mr. Hutcheson was eventually transported to Parkland Hospital.

4.53	Mr. Hutcheson died at Parkland Hospital at 11:31 a.m.

4.54	The medical examiner's report noted a six-inch bruise on the back of Mr. Hutcheson's neck.

4.55    The medical examiner's report noted that Mr. Hutcheson sustained fractured ribs as a result of the CPR.

4.56    The medical examiner's report classified the Mr. Hutcheson's death as a "homicide" caused by "physiologic stress associated with struggle and restraint."

**B.      Standards for Officer Training**

4.57    Law enforcement and detention personnel should be trained that the head and neck area are considered "no-impact zones" unless deadly force is justified, due to the high risk of serious injury or death to the suspect.

4.58    Law enforcement and detention personnel should be trained that after suspects are handcuffed, they should be sat upright or placed on their side to prevent what is known as "positional asphyxia."

4.59    Law enforcement and detention personnel should be trained that "hog tying" suspects (the act of forcing their legs against their buttocks) has been banned nationwide for decades because of its tendency to cause "positional asphyxia."

4.60    Law enforcement and detention personnel should be trained on how to accommodate their usual practices when encountering suspects who are mentally ill or those who suffer from a drug-induced psychosis.

4.61    Law enforcement and detention personnel should be trained to use de-escalation techniques when confronting suspects who are unarmed and are not a physical danger to themselves or others.

4.62    Law enforcement and detention personnel should be trained on how to provide CPR properly to non-responsive suspects.

4.63    Policymakers who order and/or provide the training discussed in paragraphs 4.57 to 4.62 must take affirmative measures to ensure that the law enforcement and detention personnel who *receive* the training *actually* retain the information provided in the training.

4.64    Policymakers who order and/or provide the training discussed in paragraphs 4.57 to 4.62 must take affirmative measures to ensure that the law enforcement and detention personnel who *receive* the training *actually* perform their duties in accordance with that training.

**C.     Standing**

4.65    Plaintiff Nicole Hutcheson was Mr. Hutcheson wife at the time of his death.

4.66    Plaintiff Ruth Boatner was Mr. Hutcheson's mother.

### V. CAUSES OF ACTION

**A.     Excessive Force (Against Defendants Reyes, Smith, Stevens, and Hayes)**

5.01    While acting under color of state law, Defendants Reyes, Smith, Stevens, and Hayes deprived Mr. Hutcheson of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, and by other laws of the United States, which allowed Mr. Hutcheson to be free from an unreasonable seizure without due process of law.

5.02    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

5.03    Mr. Hutcheson was non-violent, non-threatening, unarmed, only sought help from the individuals he encountered in the jail lobby, and was not a danger to himself or others.

5.04    A reasonable officer would know Mr. Hutcheson's behavior that he was exhibiting signs of "excited delirium."

5.05    A reasonable officer would know that the use of deadly force is clearly excessive when engaging with suspects such as Mr. Hutcheson under these circumstances.

5.06    A reasonable officer would know that the use of deadly force is clearly unreasonable when engaging with suspects such as Mr. Hutcheson under these circumstances.

5.07    A reasonable officer would know that the use of "hog tying" is clearly unreasonable.

5.08    A reasonable officer would know that the failure to return a handcuffed suspect to a seated position immediately after handcuffing him or her is clearly unreasonable.

5.09    A reasonable officer would know that the failure to administer check a non-responsive suspect for a pulse is clearly unreasonable.

5.10    A reasonable officer would know that the failure to administer CPR immediately upon learning that a suspect is non-responsive is clearly unreasonable.

5.11   Mr. Hutcheson's injuries and death resulted directly and only from Defendants Reyes, Smith, Stevens, and Hayes's use of force that was clearly excessive and clearly unreasonable.

5.12   Defendants Reyes, Smith, Stevens, and Hayes are not entitled to qualified immunity because no reasonable officer would have used deadly force when engaging with Mr. Hutcheson.

5.13   Defendants Reyes, Smith, Stevens, and Hayes are not entitled to qualified immunity because no reasonable officer would have "hog tied" Mr. Hutcheson.

5.14   Defendants Reyes, Smith, Stevens, and Hayes are not entitled to qualified immunity because no reasonable officer would have allowed Mr. Hutcheson to remain in a prone position after being handcuffed.

5.15   Defendants Reyes, Smith, Stevens, and Hayes are not entitled to qualified immunity because no reasonable officer would failed to check for a pulse after noticing that Mr. Hutcheson was non-responsive.

5.16   Defendants Reyes, Smith, Stevens, and Hayes are not entitled to qualified immunity because no reasonable officer would have failed to administer CPR after noticing that Mr. Hutcheson was non-responsive.

5.17   Defendants Reyes, Smith, Stevens, and Hayes are not entitled to qualified immunity because it is clearly established that an officer may not use deadly force when a suspect is compliant, unarmed, and subdued.

5.18   Defendants Reyes, Smith, Stevens, and Hayes are not entitled to qualified immunity because it is clearly established that an officer may not refuse to provide

necessary medical treatment to a suspect when the treatment is necessary because of the officer's own actions.

### B.     Failure to Train (Against Defendant Dallas County, Texas)

5.19   If a governmental body subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation, it can be liable for the person's injuries.

5.20   A governmental body can be liable if, by action or inaction, a supervisor demonstrates deliberate indifference to a plaintiff's constitutionally protected rights by disregarding a known or obvious consequence of his or her actions.

5.21   If Dallas County failed to provide its law enforcement and detention personnel with the training discussed in paragraphs 4.57–4.62, above, it acted with deliberate indifference to Mr. Hutcheson's constitutionally protected rights, because the consequences of failing to provide such training are known or obvious.

5.22   Alternatively, if Dallas County provided its law enforcement and detention personnel with the training discussed in paragraphs 4.57–4.62, but failed to ensure that its law enforcement and detention personnel *actually* retained the information provided in the training, it acted with deliberate indifference to Mr. Hutcheson's constitutionally protected rights, because the consequences of failing to ensure that its officers understood the training they received are known or obvious.

5.23   Alternatively, if Dallas County provided its law enforcement and detention personnel with the training discussed in paragraphs 4.57–4.62, but failed to ensure that its law enforcement and detention personnel *actually* performed their duties in accordance

with the information provided in the training, it acted with deliberate indifference to Mr. Hutcheson's constitutionally protected rights, because the consequences of failing to ensure that its officers comply with the training are known or obvious.

5.24   As the direct and proximate result of the Defendants' unlawful conduct, Joseph Hutcheson suffered death. Plaintiffs are therefore entitled to bring, and do bring, this action under Chapter 71 of the TEX. CIV. PRAC. REM. CODE, the Wrongful Death Act of the State of Texas.

5.28   As a result of this claim under the Wrongful Death Act, Plaintiff is entitled to recover damages arising from the death of Joseph Hutcheson within the jurisdictional limits of this court, for the following:

   a.   Pecuniary loss in the past;

   b.   Loss of companionship and society in the past;

   c.   Loss of companionship and society that, in reasonable probability, will sustain in the future;

   d.   Mental anguish sustained in the past;

   e.   Mental anguish that, in reasonable probability, will sustain in the future

## VI.   ATTORNEY FEES

6.1.   It was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

## VII.   DEMAND FOR A JURY TRIAL

7.1   Plaintiffs hereby request a jury trial.

## VIII.   **<u>PRAYER FOR RELIEF</u>**

8.1   For the reasons stated above, Plaintiffs asks for judgment against Defendants for the following:

- a.   Actual damages in an amount to be proved at trial;

- b.   Punitive damages in an amount deemed appropriate to punish Defendants for their conduct in killing Joseph Hutcheson;

- c.   Prejudgment and post-judgment interest;

- d.   Costs of suit, including attorney fees; and

- e.   All other, further and different relief as this Court deems just and proper.

Respectfully submitted,

/s/ Scott H. Palmer
SCOTT H. PALMER
State Bar No. 00797196
J.R. FLETCHER
State Bar No. 24038304

SCOTT H. PALMER, P.C.
15455 Dallas Parkway
Suite 540, LB 36
Addison, Texas 75001
(214) 987-4100
(214) 922-9900 Fax
scott@scottpalmerlaw.com

s/ Matthew J. Kita
Matthew J. Kita
Texas Bar No. 24050883
P.O. Box 5119
Dallas, Texas 75208
(214) 699-1863 (phone)
(214) 347-7221 (facsimile)
matt@mattkita.com

ATTORNEYS FOR PLAINTIFF