# EXHIBIT 1

*Shumpert v. City of Tupelo*, __ F.3d __,
(5th Cir. Sept. 24, 2018, WL4561268)

2018 WL 4561268
Only the Westlaw citation is currently available.
United States Court of Appeals, Fifth Circuit.

Peggy SHUMPERT, Individually, and as Administrator of the Estate of Antwun Shumpert, Sr., and on behalf of the heirs and wrongful death beneficiaries of Antwun "Ronnie" Shumpert, Sr., Deceased; Charles Foster; the Estate of Antwun Shumpert, Sr., Plaintiffs-Appellants
v.
CITY OF TUPELO, Mississippi; Officer Tyler Cook, in his individual and official capacities, Defendants-Appellees

No. 17-60774
|
September 24, 2018

Appeal from the United States District Court for the Northern District of Mississippi, Sharion Aycock, Chief Judge

**Attorneys and Law Firms**

Carlos Eugene Moore, Esq., Moore Law Office, P.L.L.C., Grenada, MS, Michael Stephen Carr, Esq., Carr Law Firm, Cleveland, MS, for Plaintiffs-Appellants.

John Samuel Hill, Esq., Mitchell, McNutt & Sams, P.A., Tupelo, MS, Berkley Neal Huskison, Esq., Mitchell McNutt & Sams, Columbus, MS, for Defendant-Appellee, City of Tupelo, Mississippi.

Jason D. Herring, Michael Spencer Chapman, General Attorney, Herring Chapman, P.A., Tupelo, MS, for Defendant-Appellee.

Before STEWART Chief Judge, and WIENER and HIGGINSON, Circuit Judges.

**Opinion**

WIENER, Circuit Judge.

*1 Plaintiffs-Appellants appeal the district court's grant of summary judgment dismissing their Fourth Amendment, 28 U.S.C. § 1983 excessive force and state law claims against Defendants-Appellees, the City of Tupelo and Officer Cook. Plaintiffs also appeal the district court's grant of Defendants' motion for sanctions and denial of Plaintiffs' motion for sanctions. We affirm.

## I. FACTS AND PROCEEDINGS

In June 2016, the Tupelo Police Department ("TPD") was conducting surveillance of suspected narcotics activities at the Townhouse Motel. On the evening of June 18, Officer Senter noticed a car that he suspected was involved in such activities and followed it. Officer Senter pulled over Antwun Shumpert, Sr. and Charles Foster for failing to use a turn signal and driving without a working tag light. Shumpert, who was driving, stopped on the side of the road and then ran from the car into a nearby neighborhood. Foster, the owner of the vehicle, stayed in it. TPD officers, including Officer Cook who was in the area with his police K9, pursued Shumpert. Officer Cook and his K9 eventually located Shumpert hiding in a crawl space under a house. Officer Cook testified that he opened the door to the crawl space and "gave [Shumpert] the command to come out ... announced that it was Tupelo Police, show me your hands, told [Shumpert that he] had a dog and that it would bite."

After this warning, Shumpert ran further under the house, prompting Officer Cook to release his dog which then bit Shumpert. Officer Cook testified that Shumpert began to fight the dog then ran from under the house and tackled Officer Cook. Shumpert pinned Officer Cook to the ground and repeatedly struck him in the face. Fearing he was about to lose consciousness, Officer Cook shot Shumpert four times. Shumpert later died as the result of his gunshot wounds.

During the time of Officer Cook's encounter with Shumpert, Foster remained with the vehicle. After Shumpert was shot, Foster was detained by the Tupelo Police Department ("TPD") for about one hour, after which the investigation was turned over to the Mississippi Highway Patrol and Mississippi Bureau of Investigation. According to Plaintiffs, Foster was detained for a total of five or six hours. His car and person were searched, including a body cavity search. Foster was later released and no charges were filed against him.

In October 2016, Foster and Shumpert's wife, Peggy, individually and on behalf of the heirs and wrongful death beneficiaries of Shumpert (collectively referred to as "Plaintiffs") filed suit against the City of Tupelo, Mississippi, Mayor Jason Shelton and Police Chief Bart Aguirre, in their official capacities ("the City"), and against Officer Tyler Cook in his individual and official capacity. Plaintiffs claimed constitutional violations under 28 U.S.C. § 1983, and excessive force, wrongful death, negligence, and negligent or intentional infliction of emotional distress under 28 U.S.C. § 1343. Plaintiffs also asserted Mississippi state law claims against Officer Cook.

*2 Both the City and Officer Cook filed motions for summary judgment. The district court held that Plaintiffs failed to establish that the alleged constitutional violations resulted from the City's policies or procedures and granted summary judgment on behalf of the City. The court also determined that Plaintiffs did not defeat Officer Cook's qualified immunity defense and granted summary judgment on that ground. In response to Defendants' motion, the district court also sanctioned Plaintiffs for discovery violations, but declined to sanction Defendants. Plaintiffs now appeal each of the summary judgment decisions as well as the district court's award of sanctions.

## II. ANALYSIS

This appeal raises issues regarding *Monell* liability, qualified immunity, Mississippi state law, and discovery sanctions. We address each in turn.

### A. *Monell* Liability

A municipality cannot be held liable under § 1983 on a theory of respondeat superior.[1] To establish municipal liability pursuant to § 1983, a plaintiff must demonstrate three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[2] An official policy must be either unconstitutional or have been adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result."[3] "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.' "[4] "These requirements must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.' "[5]

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

[2] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018).

[3] *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).

[4] *James v. Harris Cty.*, 577 F.3d 612, 617–18 (5th Cir. 2009) (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992) ).

[5] *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (alteration in original) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 415, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ).

Plaintiffs allege that the City is liable because the TPD's failure to train Officer Cook caused the constitutional violations. "[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable

if it actually causes injury."[6] "In resolving the issue of a **city's** liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform."[7] A plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing violation of plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy.[8] "We have said that the connection must be more than a mere 'but for' coupling between cause and effect."[9] "The deficiency in training must be the actual cause of the constitutional violation."[10] Plaintiffs assert that the **City** violated Shumpert's Fourth Amendment rights and is liable under § 1983 for excessive force. They also claim that the **City** is liable for violating Foster's Fourth Amendment rights.

[6] *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

[7] *Id.* at 390, 109 S.Ct. 1197.

[8] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010); *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002).

[9] *Valle*, 613 F.3d at 546 (quoting *Thompson v. Connick*, 578 F.3d 293, 300 (5th Cir. 2009), rev'd sub nom. *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (internal quotations and citations omitted) ).

[10] *Id.*

### 1. Shumpert's Fourth Amendment and § 1983 claims

*3 Plaintiffs contend that Officer Cook was not qualified to be a K9 handler under TPD policies, and that, after he was promoted to this position, the **City** failed to train him adequately as a K9 handler. The parties agree that TPD policy requires officers to have five years of experience, at least three of which must be with the TPD, before they are eligible to become K9 handlers. Officer Cook became a K9 handler after only two years with the TPD. Defendants explain that Officer Cook was promoted because he had previous experience as a K9 handler in the military. They emphasize that, before this incident, Officer Cook did not have any disciplinary issues and had received K9 training and certifications in compliance with TPD policy.

Plaintiffs are correct that the TPD failed to follow department guidelines in promoting Officer Cook, but they have failed to demonstrate that this decision amounted to "deliberate indifference," as required to impose municipal liability.[11] To establish deliberate indifference, "[u]sually a plaintiff must show a pattern of similar violations, and in the case of an excessive force claim, as here, the prior act must have involved injury to a third party."[12] Plaintiffs have not established that the TPD had a routine policy—or even any prior instances

—of promoting patrol officers to K9 handlers without the requisite experience.[13] The undisputed evidence shows that Officer Cook received canine training and certifications and had served the TPD as a K9 handler for three years without incident. Because Plaintiffs have failed to demonstrate that the TPD's K9 training policies were inadequate or that the TPD was deliberately indifferent in training or promoting K9 officers, the district court properly granted TPD's summary judgment motion in regard to Plaintiffs' claims that the TPD failed to train Officer Cook as a K9 handler.[14]

11   See *Piotrowski*, 237 F.3d at 578.

12   *Valle*, 613 F.3d at 547.

13   Because the single-incident "exception is generally reserved for those cases in which the government actor was provided no training whatsoever," *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. **2018**), it does not apply to this case. Furthermore, Plaintiffs do not raise the single-incident exception in their brief and it is therefore forfeited. *United States v. Bowen*, 818 F.3d 179, 192 (5th Cir. 2016), cert. denied, —— U.S. ——, 136 S.Ct. 2477, 195 L.Ed.2d 812 (2016).

14   See *Sanders-Burns*, 594 F.3d at 381; *Valle*, 613 F.3d at 544; *Pineda*, 291 F.3d at 332.

Plaintiffs also claim that Defendants' fluid and inconsistent policies and procedures caused Officer Cook to violate Shumpert's constitutional rights. In particular, Plaintiffs aver that Cook was not adequately trained to (1) set up a perimeter or call for backup in a barricade situation, (2) negotiate before using force, or (3) obtain a supervisor's approval before engaging a K9. Plaintiffs claim that Officer Cook's lack of training was evident based on the fact that he used a K9 to pursue Shumpert in the first place, as K9s are only supposed to be used when pursuing violent or serious offenders.

Defendants respond that TPD policies did not require Officer Cook to establish a perimeter in this case and that he had discretion whether to call for backup. Defendants further explain that Officer Cook did not violate TPD policy in engaging the K9, because TPD policy requires supervisor notification only after an officer uses an impact weapon. Defendants also contend that Officer Cook did not violate department policy by using the K9 when searching for Shumpert because Officer Cook was responding to an all-points bulletin rather than to a specific K9 request.

Again, Plaintiffs have failed to demonstrate that TPD's policies were the moving force behind the alleged constitutional violation.[15] "[M]ere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability."[16] Plaintiffs have failed to present evidence that additional training would have prevented Shumpert's injuries. The undisputed record indicates that TPD policies included detailed training about how to respond to a call for officer assistance and the requirements for officers to announce their presence to a suspect. Officer Cook did not secure the perimeter of the building in accordance with department best practices, but TPD policy

explains that "[o]fficers have wide latitude when determining how best to deal with any situation they encounter" and that "[i]f a second officer is unavailable, the first responder must exercise discretion in determining the best course of action." These policies are not unconstitutional, and there is no evidence that the TPD was deliberately indifferent in adopting these procedures.[17] Plaintiffs have not satisfied the requirements for municipal liability under *Monell*, so the district court was correct in granting summary judgment on behalf of the **City** in regard to Shumpert's Fourth Amendment and § 1983 claims.

15   *See Sanders-Burns*, 594 F.3d at 381; *Valle*, 613 F.3d at 544; *Pineda*, 291 F.3d at 332.

16   *See Roberts v. **City** of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

17   *See Sanders-Burns*, 594 F.3d at 381; *Valle*, 613 F.3d at 544; *Pineda*, 291 F.3d at 332; *Piotrowski*, 237 F.3d at 578.

### 2. Foster's Fourth Amendment claims

**\*4** Plaintiff Foster alleges that the TPD violated his Fourth Amendment rights because (1) Officer Senter did not have probable cause to stop the vehicle; (2) TPD officers did not read Foster his *Miranda* rights before his arrest; (3) Foster's handcuffs were too tight; (4) officers did not respond to his complaints that he could not breathe in the back of the police car; and (5) TPD officers subjected Foster to an unreasonable search and seizure. Defendants respond that Foster was pulled over during a valid *Terry* stop, and that after just 45 minutes, the entire scene was turned over to the Mississippi State Police. Defendants contend that Foster's claims that his handcuffs were too tight and that he could not breathe in the car do not demonstrate TPD officers acted with reckless disregard for his safety and well-being. They also contend that Plaintiffs have failed to identify any TPD policy or custom which caused the alleged constitutional violations.

It is true that Plaintiffs have not pointed to an official TPD policy or policymaker that caused the alleged constitutional violations.[18] In fact, Plaintiffs have failed to establish any causal link between the alleged violations and a TPD policy that was unconstitutional or adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result."[19] Because Plaintiffs failed to provide evidence of "(1) an official [TPD] policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge" that caused Foster's alleged constitutional violations, the district court correctly granted Defendants' motion for summary judgment on Foster's Fourth Amendment claims.[20]

18   *See Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694, 98 S.Ct. **2018**).

19   *Johnson*, 379 F.3d at 309.

20  *See Pineda*, 291 F.3d at 328. Additionally, to the extent Foster contends that his Fifth Amendment rights were violated because he never received a *Miranda* warning, we note that he has not alleged that his supposed interrogation led to any incriminating statements or that his statements were later used against him. Foster was not charged with any crime, so his claims of a constitutional violation based on *Miranda* are entirely without merit. *See Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.... until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.").

### B. Qualified Immunity

Plaintiffs also appeal the district court's decision to dismiss their § 1983 excessive force and Fourth Amendment claims against Officer Cook in his personal capacity on qualified immunity grounds. Government officials may invoke qualified immunity to shield themselves "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[21] "Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'"[22] "Needless to say, unsubstantiated assertions are not competent summary judgment evidence."[23]

21  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ).

22  *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ).

23  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

In reviewing a motion for summary judgment based on qualified immunity, this court undertakes a two-step analysis.[24] We must decide (1) whether an officer's conduct violated a federal right and (2) whether this right was clearly established.[25] These steps may be considered in either order.[26]

24  *Rivera v. Bonner*, 691 F. App'x 234, 237 (5th Cir. 2017) (unpublished).

25  *See id.*

26  *Pearson*, 555 U.S. at 236, 129 S.Ct. 808 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

*5 "When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures."[27] We thus must consider Officer Cook's (1) use of K9 force and (2) use of deadly force. The resolution of this case turns primarily on whether these rights were clearly established, so we will begin with that step of the qualified immunity analysis.

27  *Tolan v. Cotton*, 572 U.S. 650, 134 S.Ct. 1861, 1865, 188 L.Ed.2d 895 (2014).

To determine whether a right was clearly established, we must evaluate whether Officer Cook's conduct was proscribed by clearly established law at the time of the incident. "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[28] In determining what constitutes clearly established law, this court first looks to Supreme Court precedent and then to our own.[29] If there is no directly controlling authority, this court may rely on decisions from other circuits to the extent that they constitute "a robust 'consensus of cases of persuasive authority.' "[30]

28  *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (quotation and citation omitted).

29  *See id.* at 412.

30  *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2084, 179 L.Ed.2d 1149 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ).

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[31] Ultimately, the touchstone is " 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.' "[32]

31  *Taylor v. Barkes*, ---- U.S. ----, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) ); *see also Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ) (citations omitted) ("For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.' ").

32  *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope*, 536 U.S. at 740, 122 S.Ct. 2508).

It is "clearly established that [arrestees] ha[ve] a constitutional right to be free from excessive force during an investigatory stop or arrest."[33] This does not end the inquiry, however, as "[t]he Supreme Court has carefully admonished that we are 'not to define clearly established law at a high level of generality.' "[34] To defeat qualified immunity, a plaintiff must demonstrate that "it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*."[35]

33  *Tarver v. City of Edna*, 410 F.3d 745, 753–54 (5th Cir. 2005).

34  *Hernandez v. United States*, 785 F.3d 117, 120 (5th Cir. 2015) (en banc) (quoting *al-Kidd*, 563 U.S. at 742, 131 S.Ct. 2074.

35  *Id.* (emphasis added) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) ); *see also Brosseau*, 543 U.S. at 198–99, 125 S.Ct. 596 ("[T]here is no doubt that *Graham v. Connor* clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized in *Anderson* [*v. Creighton* ] 'that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense....' " (citation omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ) ).

### 1. K9 force

*6 Plaintiffs have the burden of demonstrating that Officer Cook violated a "clearly established law at the time the challenged conduct occurred." [36] Plaintiffs do not provide any legal authority to demonstrate that Officer Cook violated clearly established law by releasing the K9. Instead, they contend generally that Shumpert had a constitutional right to be free from excessive force. This court has previously rejected such general contentions. [37]

36  *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).

37  *See Cass v. City of Abilene*, 814 F.3d 721, 732 (5th Cir. 2016) ("Appellants' entire argument on this second prong of the qualified immunity test is that 'it is clearly established in the law that citizens are protected against unjustified, excessive police force.' This general statement is insufficient to meet Appellants' burden."); *see also al-Kidd*, 563 U.S. at 742, 131 S.Ct. 2074 ("We have repeatedly told courts ... not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted).

Even if Plaintiffs had included case law to support their argument, they would still be unable to demonstrate that Officer Cook's conduct violated clearly established law. At the time of the challenged conduct, neither the United States Supreme Court nor this court had addressed what constitutes reasonable use of K9 force during an arrest. [38] After that date, this court decided *Cooper v. Brown*, which addressed the issue. [39]

38  Other courts had found the use of K9 force justified in similar circumstances. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (holding use of K9 force during arrest—including 31 dog bites—was reasonable because arrestee was suspected of committing serious crimes, actively fled from police, and police thought he might be armed); *Miller v. Clark Cty.*, 340 F.3d 959, 965 (9th Cir. 2003) (use of K9 force was justified against suspect who had fled from police and was hiding in woods); *Matthews v. Jones*, 35 F.3d 1046, 1051 (6th Cir. 1994) (use of K9 force was reasonable when suspect fled into the dark woods after a traffic stop, making it easier for suspect to ambush the officers); *Robinette v. Barnes*, 854 F.2d 909, 913 (6th Cir. 1988) (use of deadly K9 force was warranted when suspected felon was hiding inside dark building, had been warned that a dog would be used, and still refused to surrender).

39  *See Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016). Because *Cooper* had not been decided at the time of the conduct at issue, it cannot define clearly established law for this case. Nonetheless, a discussion of *Cooper* is helpful in fully explaining the issues in this case, so we include it in our analysis.

In *Cooper*, the police initiated a traffic stop based on a suspected DUI. [40] The suspect stopped, but then ran from the police and into a residential neighborhood. [41] The officer

who initiated the stop notified officers in the area about the fleeing suspect.[42] Officer Brown, along with his police K9, responded, and the K9 located the suspect and bit him on the leg.[43] The dog continued to bite Cooper for one to two minutes.[44] Cooper did not attempt to flee, did not strike the dog, and Officer Brown could see Cooper's hands and "appreciate[d] that he had no weapon."[45] Despite these facts, Officer Brown did not order the K9 to release the bite until he had finished handcuffing Cooper.[46] Cooper filed a § 1983 claim against Officer Brown in his individual capacity, and Officer Brown moved for summary judgment on the basis of qualified immunity.[47]

40   *Id.* at 521.

41   *Id.*

42   *Id.*

43   *Id.* Importantly, the initial bite was not at issue in *Cooper*, as the record indicated that Officer Brown did not give a bite command. Instead, the excessive force claim was based on the duration of the dog bite and the officer's failure to intervene.

44   *Id.*

45   *Id.*

46   *Id.*

47   *Id.*

*7 The court determined that Officer Brown's use of K9 force was clearly excessive and unreasonable given the facts and circumstances of that case, so he was not entitled to qualified immunity.[48] The court explained that "[n]o reasonable officer could conclude that Cooper posed an immediate threat to Brown or others."[49] There was no indication he was, or would be, violent. Officer Brown knew that Cooper did not have a weapon. Once Officer Brown found him, Cooper did not resist arrest or further attempt to flee. Rather, he complied with Officer Brown's instructions. Officer Brown, however, did not stop the use of K9 force. Because Officer Brown did not attempt to negotiate and "subjected Cooper to a lengthy dog attack that inflicted serious injuries, even though he had no reason to believe that Cooper posed a threat," the court held that the use of force was clearly excessive and unreasonable.[50] Thus, under *Cooper*, the law is now clearly established that when "[n]o reasonable officer could conclude that [a suspect] pose[s] an immediate threat to [law enforcement officers] or others," it is unreasonable to use K9 force to subdue a suspect who is complying with officer instructions.[51]

48   *Id.* at 522.

49   *Id.*

50   *Id.* at 523.

51   *Id.*

Even if *Cooper* were applicable, Officer Cook's conduct would not violate clearly established law. We emphasized in *Cooper* that "[o]ur caselaw makes certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced."[52] Because the officer in *Cooper* continued to use force and even increased its use while the threat to officers decreased, he violated clearly established law. By contrast, Officer Cook did not use or increase the use of force after Shumpert was subdued; instead, Shumpert ignored Officer Cook's instructions and retreated further under the home, preventing Officer Cook from determining whether he was armed. While caselaw establishes that it is unreasonable to use force after a suspect is subdued or demonstrates compliance[53] this court has repeatedly held that the "measured and ascending" use of force is not excessive when a suspect is resisting arrest—provided the officer ceases the use of force once the suspect is subdued.[54] Because it is undisputed that Shumpert was violently resisting arrest and that Officer Cook did not know whether he was armed, Plaintiffs have not met their burden of demonstrating that—under the discrete facts of this case—Officer Cook's use of K9 force was objectively unreasonable in light of clearly established law.[55] The district court properly determined that Officer Cook was entitled to qualified immunity on this claim.

52   *Id.* at 524.

53   *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013); *Bush*, 513 F.3d at 501–02.

54   *See Bailey v. Preston*, 702 F. App'x 210, 211 (5th Cir. 2017) (unpublished); *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (holding use of force was not unreasonable when officers "responded with 'measured and ascending' actions that corresponded to [the suspect's] escalating verbal and physical resistance"); *Galvan v. City of San Antonio*, 435 F. App'x. 309, 311 (5th Cir. 2010) (unpublished) (explaining that the use of force was reasonable when it involved "measured and ascending responses" to a plaintiff's noncompliance).

55   *See* cases cited, note 38.

## 2. *Deadly force*

We must next determine whether Officer Cook's use of deadly force violated clearly established law. United States Supreme Court and Fifth Circuit precedent is clear that an officer may use deadly force when a suspect poses a threat of serious harm either to the officer or to other individuals.[56] Whether Shumpert posed a threat of serious harm is based on the facts and circumstances of this particular case. We review the facts in the light most favorable to Shumpert, "but only when ... both parties have submitted evidence of contradictory facts."[57] Officer Cook testified that Shumpert ran from under the crawl space, tackled him, and repeatedly struck him in the head. According to Officer Cook's testimony, he tried to

fight Shumpert until he (Officer Cook) felt he might lose consciousness. At that point, he fired four shots at Shumpert.

56  *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."); *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003) ("Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others.").

57  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

**\*8** Plaintiffs allege that at least one shot was fired from some distance, discrediting Officer Cook's testimony. Plaintiffs also contend that Dr. Mitchell, their forensic expert, noted that one of Shumpert's gun shot wounds was caused from a short distance.[58] These facts, however, do not conflict with Officer Cook's testimony regarding the incident. The only two individuals to witness the shooting were Officer Cook and Shumpert, who is now tragically prevented from providing his version of the encounter. Nevertheless, Plaintiffs still have the burden of adducing evidence that contradicts Officer Cook's description of the shooting.[59] They have failed to meet this burden. A reasonable officer could have believed that Shumpert "posed a threat of serious harm," so Officer Cook's use of deadly force under these circumstances did not violate clearly established law.[60] He is therefore entitled to qualified immunity on this claim.[61]

58  Even if Officer Cook fired one of the four shots from a distance, the use of deadly force was still justified, as an officer using deadly force "need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, 572 U.S. 765, 134 S.Ct. 2012, 2022, 188 L.Ed.2d 1056 (2014). Other officers who were in the area, as well as Charles Foster, testified that they heard four shots fired in rapid succession, indicating all the shots were fired before the threat ended.

59  "At the summary judgment stage, we require evidence—not absolute proof, but not mere allegations either." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 (5th Cir. 2009) (quoting *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)).

60  In their reply brief and at oral argument, Plaintiffs argued that Officer Cook is not entitled to qualified immunity because he created the situation which led to Shumpert's injuries. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994) ("When state actors knowingly place a person in danger" the state is "accountable for the foreseeable injuries that result from their conduct[.]"). Plaintiffs assert that "state actors may be held liable if they created the plaintiff['s] peril" or "increased the risk of harm." (*Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995)). In response, Officer Cook argues that Plaintiffs are barred from raising a state-created danger theory at this stage in the proceedings, because they did not raise this issue in the district court or their opening brief.
Plaintiffs have waived this issue, as they did not sufficiently raise it in their opening brief. *United States v. Scroggins*, 599 F.3d 433, 446 (5th Cir. 2010) ("A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it.") (quoting *Knatt v. Hosp. Serv. Dist. No. 1*, 327 F. App'x 472, 483 (5th Cir. 2009) (unpublished)). Even if Plaintiffs had preserved this issue, the theory of state-created danger is not clearly established law. *See Chavis v. Borden*, 621 F. App'x 283, 286 (5th Cir. 2015) (unpublished) ("Unlike our sister Circuits, we have repeatedly declined to decide whether [a state-created danger] cause of action is viable in the Fifth Circuit."); *see also Saenz v. City of McAllen*, 396 F. App'x 173, 177 (5th Cir. 2010) (unpublished) (quoting *Walker v. Livingston*, 381 F. App'x 477, 479–80 (5th Cir. 2010) (unpublished)) ("[T]his court has held that the state created danger theory is 'not clearly established law within this circuit such that a § 1983 claim based on this theory could be sustained[.]' ").

61     *See Hope,* 536 U.S. at 739, 122 S.Ct. 2508.

### C. Mississippi State Law Claims

Plaintiffs also appeal the district court's decision to dismiss their state law claims against Officer Cook. The Mississippi Tort Claims Act states:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... Arising out of any act or omission of an employee of a governmental entity engaged in the performance [of] ... police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury[.] [62]

62     Miss. Code Ann. § 11-46-9.

**\*9** It is undisputed that at the time of the encounter, Officer Cook was acting in the course and scope of his police duties and that Shumpert was engaged in criminal activity.[63] The plain language of the Mississippi Tort Claims Act absolves officers from liability in these circumstances, so we affirm the district court's dismissal of Plaintiffs' state law claims against Officer Cook.

63     *See Miss. Dep't of Pub. Safety v. Durn,* 861 So.2d 990, 997 (Miss. 2003) ("Misdemeanor traffic offenses are criminal activities within the [Mississippi Tort Claims Act].").

### D. Discovery Sanctions

Plaintiffs also appeal the district court's decisions regarding discovery sanctions. Defendants served Plaintiffs with the first set of interrogatories, requests for production, and requests for admission on November 23, 2016. Plaintiffs denied the requests for admission on December 12, 2016, but did not answer the interrogatories or otherwise respond to the production request. Two months after the discovery responses were due, Defendants wrote to Plaintiffs' counsel and requested the information. When Plaintiffs' counsel failed to respond, Defendants filed a motion to compel. Defendants sought costs and attorney's fees related to the motion.

Shortly after Defendants filed the motion to compel, Plaintiffs responded to the discovery request and filed an opposition to Defendants' motion to compel. Plaintiffs claimed that they did not intend to be defiant or noncompliant and that their failure to respond did not "thwart the discovery process." Defendants, however, deemed Plaintiffs' discovery responses insufficient, and again wrote to Plaintiffs' counsel requesting additional information. When Plaintiffs' counsel did not respond, Defendants filed a second motion to compel.

The magistrate judge granted both motions to compel[64] and sanctioned Plaintiffs pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). Defendants submitted records of the costs and fees associated with the discovery motions, totaling $3,086.00. Plaintiffs' counsel also filed a motion for sanctions, claiming that Defendants filed the motions to compel before scheduling a conference with the magistrate judge, as required by the case management order.[65] Defendants explained that they had attempted to contact Plaintiffs' counsel before filing the motions, but never received a response. The magistrate judge denied Plaintiffs' motion for sanctions and held that Defendants costs and fees were reasonable. The district court affirmed the magistrate judge's decisions.

[64] According to the City, the first motion to compel was granted "in its entirety" and "nearly all of the second motion to compel" was granted.

[65] Plaintiffs' counsel filed several other motions seeking either to have the sanctions set aside or impose sanctions on Defendants, all of which were denied by the magistrate judge. Plaintiffs then filed motions to reconsider each of the magistrate judge's orders. These motions were also denied.

### 1. Standard of Review

This court reviews Rule 37 sanctions for an abuse of discretion.[66] Factual findings underlying the sanctions are reviewed for clear error only.[67] "A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse."[68] "[T]he vigor of our review of a district court's sanction award depends on the circumstances of the case."[69] "If the sanctions imposed are *substantial* in amount, type, or effect, appellate review of such awards will be inherently more rigorous; such sanctions must be quantifiable with some precision."[70] This court has previously held that sanctions of even $50,000 are not "on the high end of the scale."[71]

[66] *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012).

[67] *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010).

[68] *Moore v. CITGO Ref. & Chems. Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) ).

[69] *United States v. City of Jackson*, 359 F.3d 727, 732 (5th Cir. 2004).

[70] *Topalian v. Ehrman*, 3 F.3d 931, 936 (5th Cir. 1993) (emphasis added) (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 883 (5th Cir. 1988) ).

[71] *City of Jackson*, 359 F.3d at 732–33.

### 2. Sanctions against Plaintiffs' counsel

**\*10** Plaintiffs contend that the district court was not *required* to impose sanctions. Plaintiffs' counsel's only justification for his failure to respond to the discovery request was that he was busy with professional and personal obligations. These circumstances do not "substantially justif[y]" Plaintiffs' failure to comply with the discovery deadlines or respond to Defendants.[72] The district court did not abuse its discretion in granting Defendants' motion for sanctions.[73]

---

[72] FED. R. CIV. PROC. 37(a)(5).

[73] *See* FED. R. CIV. PROC. 37(a); *Smith & Fuller*, 685 F.3d at 488; *City of Jackson*, 359 F.3d at 732. Plaintiffs argue the district court abused its discretion in awarding fees and costs related to Defendants' second motion to compel, as that court did not grant that motion in its entirety. This argument is without merit. Under Rule 37, when a motion to compel is granted in part and denied in part, the district court has discretion to "apportion the reasonable expenses for the motion." The magistrate judge explained that "it would be unconscionable to apportion expenses" because "[o]f the five interrogatories placed in issue, the court denied only a fraction of one interrogatory, rendering the apportionable expenses, if any, too trivial to qualify." This explanation demonstrates that the court did not abuse its discretion in awarding costs and fees in relation to the second motion to compel.

Plaintiffs also contend that the amount of the sanctions was unreasonable. The total sanctions award in this case was $3,086.00, which the district court found represented reasonable costs for filing two motions to compel. The court noted that this case involved "heightened media scrutiny," which necessarily demanded careful research and attention to factual details when drafting the discovery motions. There is no evidence that the district court abused its discretion in awarding $3,086.00 in sanctions.[74]

---

[74] *See Positive Software Sols., Inc.*, 619 F.3d at 460. Furthermore, the low amount of the sanction award in this case does not require particularly rigorous review. *See Topalian*, 3 F.3d at 936.

### 3. Plaintiffs' motion for sanctions against Defendants

Plaintiffs also contend that the district court abused its discretion in failing to sanction Defendants for violating the case management order. That order states that if a discovery dispute arises, the parties must first communicate among themselves to resolve the dispute. If those communications fail, the parties must conduct a telephone conference with the magistrate judge. "Only if the telephonic conference with the judge is unsuccessful in resolving the issue may the party file a discovery motion."

It is undisputed that Defendants did not conduct a telephone conference with the magistrate judge before filing the motions to compel. But Defendants contend that it was impossible

to arrange a telephone conference because Plaintiffs' counsel would not even respond to their written communications. In their view, Plaintiffs' refusal to communicate exempted Defendants from the telephone conference requirement.

In denying Plaintiffs' motion for sanctions, the magistrate judge explained that Federal Rule of Civil Procedure 16(f)(2) states that a party should not be sanctioned for violating a case management order if the noncompliance "was substantially justified or other circumstances make an award of expenses unjust."[75] Because Defendants had twice attempted to communicate with Plaintiffs' counsel but received no response, the magistrate judge determined that "an award of sanctions [against Defendants] would be wholly unjust."[76] These facts do not amount to "unusual circumstances showing a clear abuse."[77] The district court did not abuse its discretion in declining to sanction Defendants.

[75] FED. R. CIV. PROC. 16.

[76] The district court also noted that Defendants had previously agreed to an extension of discovery deadlines, at Plaintiffs' request.

[77] See Moore, 735 F.3d at 315 (quoting Kelly, 213 F.3d at 855).

## III. CONCLUSION

*11 We affirm the district court's summary judgment decisions in favor of the City and Officer Cook. We also affirm the district court's decisions to grant Defendants' motion for sanctions and deny Plaintiffs' motion for sanctions.

**All Citations**

--- F.3d ----, 2018 WL 4561268

End of Document © 2018 Thomson Reuters. No claim to original U.S. Government Works.