In the United States District Court
Northern District of Texas
Dallas Division

| | | |
|---|---|---|
| Nicole Hutcheson, *et al.*, | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | Civil Action No. 3:17-cv-02021 |
| | § | |
| Dallas County, Texas, *et al.*, | § | |
| | § | |
| *Defendants* | § | |

---

## Plaintiff's Response to the Individual Defendants' Converted Motion for Summary Judgment on Qualified Immunity and Defendant Dallas County's Motion to Dismiss

---

Scott H. Palmer
Texas Bar No. 00797196
James P. Roberts
Texas Bar No. 24105721
15455 Dallas Parkway, Suite 540
Dallas, Texas 75001
(214) 987-4100
scott@scottpalmerlaw.com

Matthew J. Kita
Texas Bar No. 24050883
P.O. Box 5119
Dallas, Texas 75208
(214) 699-1863
matt@mattkita.com

Attorneys for Plaintiff

# TABLE OF CONTENTS

Table of Contents ..........................................................................i

Table of Authorities .....................................................................ii

Factual and Procedural Background ............................................... 1

Response to the Individual Defendants' Converted Motion for Summary Judgment ....................................................................................4

A.   The individual Defendants are not entitled to summary judgment on their qualified-immunity defense. ........................................4

B.   The individual Defendants are not entitled to summary judgment on the basis that Plaintiffs have insufficient evidence of causation. ........ 11

Response to Dallas County's Amended Motion to Dismiss ........................ 14

A.   Plaintiff has alleged sufficient facts to demonstrate what is already established as a matter of law: The Dallas County Sheriff is the policymaker for the Dallas County jail. ............................................. 16

B.   Plaintiff pleaded sufficient allegations regarding The County's failure to train its jail personnel. ................................................... 19

C.   Plaintiffs pleaded a direct causal connection between Joseph's death and the County's failure to train the individual Defendants. .............26

D.   Even if this Court were to find a deficiency in Plaintiffs complaint, dismissal is not appropriate without first affording Plaintiffs an opportunity to replead. ...................................................................28

Conclusion and Prayer ..................................................................29

Certificate of Service....................................................................30

## Table of Authorities

### Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................. 14, 15, 23, 24

*Baker v. Putnal*,
  75 F.3d 190 (5th Cir. 1996) ......................................................................... 14

*Bell Atlantic Co. v. Twombly*,
  550 U.S. 544 (2007) ................................................................. 14, 15, 23, 24

*Bell v. Liberty County, Tex.*,
  No. 1:09-CV-766, 2011 WL 2358361 (E.D. Tex. June 14, 2011) ............... 19

*Capital Films Corp. v. Charles Fries Productions, Inc.*,
  628 F.2d 387 (5th Cir. 1980) ........................................................................ 5

*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989) .................................................................................... 20

*Conley v. Gibson*,
  355 U.S. 41 (1957) ...................................................................................... 29

*Darden v. City of Fort Worth, Tex.*,
  880 F.3d 722, 722 (5th Cir. 2018) ..................................................... 6, 10, 12

*Dunn v. Denk*,
  54 F.3d 248 (5th Cir. 1995) ......................................................................... 12

*Evans v. City of Chicago*,
  2010 WL 3075651 (N.D. Ill. Aug. 5, 2010) ................................................. 23

*Gonzalez v. Kay*,
  577 F.3d 600 (5th Cir. 2009) ....................................................................... 15

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ....................................................................... 28

*Greenwood v. City of Yoakum*,
  2008 WL 4615779 (S.D. Tex. Oct. 17, 2008) .............................................. 22

*Groden v. City of Dallas, Tex.*,
  826 F.3d 280 (5th Cir. 2016) ................................... 17

*Hobart v. City of Stafford*,
  2010 WL 3894112 (S.D. Tex. Sept. 29, 2010) ..........................22

*Johnson v. City of Shelby*,
  135 S. Ct. 346 (2014) ................................... 21

*Johnston v. City of Houston, Tex.*,
  14 F.3d 1056 (5th Cir. 1994) ................................... 6

*Jones v. City of Mesquite*,
  No. 3:18-CV-0117-B , 2018 WL 3853714 (N. D. Tex. July 25, 2018) ...17, 18

*Jones v. Greninger*,
  188 F.3d 322 (5th Cir.1999) ..........................28

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
  507 U.S. 163 (1993) ................................... 21, 25

*Lewis v. Dallas County*,
  No. 3:15-cv-04014-L (N.D. Tex. Mar. 8, 2017) ..........................27

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ................................... 14

*Matthews v. District of Columbia*,
  730 F. Supp. 2d 33 (D.D.C. 2010) ..........................22

*Michael v. County of Nassau*,
  2010 WL 3237143 (E.D.N.Y. Aug. 11, 2010) ..........................22

*Okonkwo v. City of Garland, Tex.*,
  No. 3:01-CV-1938-L, 2002 WL 432951 (N.D. Tex. Mar. 18, 2002) .........27

*Oporto v. City of El Paso*,
  2010 WL 3503457 (W.D. Tex. Sept. 2, 2010) ..........................22

*Owen v. City of Independence*,
  445 U.S. 622 (1980) ................................... 25

*Painter Family Investments, LTD., L.L.P. v. Underwriters at Lloyds*,
    836 F. Supp. 2d 484 (S.D. Tex. 2011) ........................................................29

*Robbins v. City of Miami Beach*,
    2009 WL 3448192 (S.D. Fla. Oct. 26, 2009) ...........................................23

*Robinson v. District of Columbia*,
    736 F. Supp. 2d 254 (D.D.C. 2010) ...........................................................23

*Sagan v. Sumner County Board of Educ.*,
    726 F. Supp. 2d 868 (M.D. Tenn. 2010) ...................................................22

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ............................................................ 15, 28

*Swanson. v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) .....................................................................24

*Swidriski v. City of Houston*,
    31 F. App'x 154 (5th Cir. 2001) ................................................................28

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) .....................................................................14

*Thomas v. City of Galveston*,
    800 F. Supp. 2d 826 (S.D. Tex. 2011) ...................................21, 22, 23, 25

*Turner v. Upton County, Tex.*,
    915 F.2d 133 (5th Cir. 1990) .....................................................................16

*Waste Control Spec., L.L.C. v. Envirocare of Tex., Inc.*,
    199 F.3d 781 (5th Cir.2000)........................................................................28

## Rules

Fed. R. Civ. P. 12..............................................................................................14

Fed. R. Civ. P. 8 ................................................................................................21

## Factual and Procedural Background

Plaintiffs Nicole Hutcheson and Ruth Boaner are the surviving wife and mother of Joseph Hutcheson. Joseph died on August 1, 2015 in the lobby of the Dallas County Jail. Plaintiffs initiated this civil-rights lawsuit on July 31, 2017, in which they alleged that the excessive force of four Dallas County employees (Defendants Elvin Hayes, Fernando Reyes, Trenton Smith, Betty Stevens) as well as the County itself, were responsible for Joseph's death.[1]

Specifically, Plaintiffs alleged that Joseph entered the lobby of the jail panicked, physically unstable, and asking people for help.[2] They further alleged that although was unarmed, had nothing in his hands, and did not threaten anyone.[3] While he was pacing around the lobby, not saying anything to anyone, Defendant Reyes grabbed Joseph from behind, forced his feet out from under him, dropped him onto the floor, and turned him onto his stomach.[4] Defendants Smith and Stevens then placed their knees on his shoulder and back, while Joseph writhed and screamed in pain.[5] They

---

[1] Docket No. 1.

[2] Docket No. 1, p. 3.

[3] Docket No. 1, p. 3.

[4] Docket No. 1, pp. 3–5.

[5] Docket No. 1, p. 6.

handcuffed him and left him lying on the floor for two minutes.[6] Defendant

Hayes then stepped on Joseph's feet, crossed his legs, and pushed his feet

towards his buttocks and held them there.[7] After Hayes released Joseph's

legs, Joseph never moved again of his own volition, or gave any audible

responses.[8] No one administered CPR to Joseph for at least seven minutes

after he stopped moving.[9] He was taken to Parkland Hospital, where he died

within the hour.[10]

In their complaint, Plaintiffs alleged that Hayes, Reyes, Smith, and

Stevens's use of excessive force caused Joseph's death, as did the County's

failure to train these employees.[11] Defendants did not file an answer to

Plaintiffs complaint, but instead argued that Plaintiffs' entire case should be

dismissed for failing to state a claim on which relief could be granted.[12] All of

the defendants claimed that Plaintiffs failed to plead sufficient facts to state

---

[6] Docket No. 1, p. 6.

[7] Docket No. 1, p. 7.

[8] Docket No. 1, p. 7.

[9] Docket No. 1, p. 7.

[10] Docket No. 1, p. 7.

[11] Docket No. 1., pp. 9–13.

[12] Docket No. 5.

*any* cause of action.[13] Additionally, the individual Defendants argued in the alternative, that Plaintiffs failed to plead sufficient facts that would defeat their affirmative defense of qualified immunity.[14] Plaintiffs filed a lengthy response to this motion on November 27, 2017.[15]

Just under six months later, Defendants filed an amended motion to dismiss, which raised essentially identical arguments.[16] Plaintiffs filed a lengthy response to the amended motion on on June 1, 2018.[17]

The Court held a hearing on Defendants' amended motion to dismiss on January 17, 2019.[18] At the hearing, Plaintiffs agreed to amend their complaint to allege additional facts on the qualified-immunity issue and their failure-to-train claim against the County, which they did on February 19, 2019.[19] In response, Defendants filed a new motion to dismiss.[20] The Court, however, determined that the portion of Defendant's motion that addressed

---

[13] Docket No. 5

[14] Docket No. 5.

[15] Docket No. 16.

[16] Docket No. 24.

[17] Docket No. 29.

[18] Docket No. 36.

[19] Docket No. 40.

[20] Docket No. 41.

qualified immunity should be treated as a motion for summary judgment.[21] In a separate order, it denied Plaintiffs' request for limited discovery on the qualified-immunity issue, and ordered Plaintiffs to file a response to the individual Defendants now-converted motion for summary judgment on qualified immunity, and the County's amended motion to dismiss.[22]

## RESPONSE TO THE INDIVIDUAL DEFENDANTS' CONVERTED MOTION FOR SUMMARY JUDGMENT

### A.    The individual Defendants are not entitled to summary judgment on their qualified-immunity defense.

At the outset of this discussion, Plaintiffs note that it is somewhat difficult to "respond" to arguments that the individual defendants never actually made. The substance of section 1-A of their amended motion to dismiss is devoted to rehashing the allegations in Plaintiffs' amended complaint and then arguing that the allegations did not assert a plausible claim for relief, (as if Plaintiffs had admitted that the  force used was "minimal" and "routine.") The individual Defendants further argued that Plaintiffs' allegations did not describe objectively unreasonable conduct—or in the alternative, that it did not violate clearly established law. [23]

---

[21] Docket No. 43.

[22] Docket No. 48.

[23] Docket No. 41, PageID 282–87.

Because the individual Defendants never filed a motion for summary judgment, they never advanced an argument that either (a) the evidence filed in support of their motion to dismiss conclusively establishes the absence of a fact issue on either of these elements; or (b) that Plaintiffs cannot come forward with any evidence that would do so. It is well-established that a court may not grant a motion for summary judgment on a ground not stated in the motion.[24] But in light of this Court's order denying Plaintiffs an opportunity for limited discovery and requesting a response to the motion as it presently stands, Plaintiffs presume that the individual Defendants are arguing that the the evidence they filed in support of their motion to dismiss conclusively establishes the absence of a material fact on the elements of this defense.

To that end, if the individual Defendants believe that an entirely silent video "conclusively establishes" their qualified-immunity defense, they are mistaken. Last year, the Fifth Circuit in *Darden v. City of Fort Worth, Texas*, the Fifth Circuit not only held that "a police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest," it also held that this law was "clearly established" for an

---

[24] *Capital Films Corp. v. Charles Fries Productions, Inc.*, 628 F.2d 387, 390 (5th Cir. 1980).

incident that occurred in May *2013*—more than two years before the incident that is the subject of this suit.[25] Accordingly, if the evidence that Defendants produced shows that Joseph was *not* resisting arrest at the time he was first slammed to the ground, Defendants are not entitled to summary judgment on their qualified immunity defense.

It is also well-established that summary judgment is not appropriate when the summary-judgment evidence is not sufficient to conclusively establish *what actually happened* in the moments immediately preceding the use of force. Over a quarter-century ago, the Fifth Circuit held in *Johnson v. City of Houston, Texas* that a defendant officer was *not* entitled to qualified immunity as a matter of law when "a genuine dispute as to the material and operative facts of this case exists."[26] For the reasons discussed below, the silent video fails to conclusively establish that the individual Defendants' use of force on Joseph was constitutionally permitted *or* objectively reasonable.

The silent video in evidence in this film reveals the following sequence of events, which can be summarized as follows:

---

[25] *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 725, 731–732 (5th Cir. 2018), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69 (2018).

[26] *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1061 (5th Cir. 1994).

—   Joseph enters the jail lobby[27]

—   Joseph sits down on a bench in the lobby[28]

—   Joseph gets up and approaches an officer[29]

—   A second officer comes out of booth[30]

—   Joseph is walking through the lobby[31]

—   Joseph sits down on a bench for the second time[32]

—   Both officers referenced above are standing over Joseph as he sits on a bench[33]

—   Two more officers walk into the lobby[34]

—   Joseph stands up and walks through lobby[35]

—   An officer approaches Joseph and slams him on the ground[36]

—   An officer gets on top of Joseph[37]

—   An officer rolls Joseph onto his stomach with another officer on his back[38]

---

[27] Docket No. 26. at 39:21

[28] Docket No. 26. at 39:35

[29] Docket No. 26. at 39:47

[30] Docket No. 26. at 40:00

[31] Docket No. 26. at 40:05

[32] Docket No. 26. at 40:10

[33] Docket No. 26. at 40:15

[34] Docket No. 26. at 40:40

[35] Docket No. 26. at 40:45

[36] Docket No. 26. at 41:30

[37] Docket No. 26. at 41:38

[38] Docket No. 26. at 41:40

— Two other officers apply pressure to Joseph[39]

— Joseph is handcuffed behind his back[40]

— When Joseph starts to roll onto his side, an officer puts knee into his back and applies pressure to hold him down[41]

— A fourth officer approaches Joseph and and stands on Joseph's feet[42]

— The officer who was standing on Joseph's feet then bends Joseph's left leg up toward his buttocks as Joseph is on his stomach with his hands cuffed behind his back[43]

— This same officer then pulls Joseph's right leg toward his buttocks as Joseph is on his stomach with his hands cuffed behind his back[44]

— This same officer then leans his body weight against Joseph's legs as they are bent up toward his buttocks as Joseph is on his stomach with his hands cuffed behind his back and another officer is on top of him[45]

— When the officers release Joseph from the hog tie hold position, his body is limp[46]

— When the officers roll Joseph over, they realize he is non-responsive[47]

---

[39] Docket No. 26. at 41:44

[40] Docket No. 26. at 42:38

[41] Docket No. 26. at 42:55

[42] Docket No. 26. at 43:10

[43] Docket No. 26. at 43:30

[44] Docket No. 26. at 43:32

[45] Docket No. 26. at 43:35

[46] Docket No. 26. at 43:57

[47] Docket No. 26. at 44:46

— When the officers pick up Joseph by his arms, his body is limp[48]

— The officers sit Joseph's body back so that he is sitting up with his buttocks resting on the bottom of his feet as he is hunched over and not responding[49]

— An officer taps Joseph in an apparent attempt to get him to respond, but has no success[50]

— Medical assistance arrives as Joseph is still hunched over and non-responsive[51]

— An officer removes Joseph's handcuffs[52]

— An officer and a medical personnel roll Joseph onto his back and pull his legs out from under him[53]

— They check for a pulse, but do not appear to detect one[54]

— The officers clear the jail lobby[55]

— Medical personnel initiate CPR on Joseph[56]

— Joseph is rolled out of the jail lobby on a stretcher[57]

Three facts that are *undisputed* from the video: (1) Joseph was

unarmed and had nothing in his hands; (2) Joseph did not make any furtive

---

[48] Docket No. 26. at 44:55

[49] Docket No. 26. at 45:12

[50] Docket No. 26. at 46:00

[51] Docket No. 26. at 49:10

[52] Docket No. 26. at 50:30

[53] Docket No. 26. at 50:40

[54] Docket No. 26. at 50:47

[55] Docket No. 26. at 51:05

[56] Docket No. 26. at 51:21

[57] Docket No. 26. at 1:19:31

movements that would allow a reasonable person to believe he was reaching

for a weapon; and (3) Joseph never attempted to flee any of the officers. But

numerous facts are *absolutely* disputed because the video has no sound. What

did Joseph say to the people in the lobby? What did the officers say to him?

Did they ask him to leave and did he refuse? What noises was Joseph making

and what was he saying after the officer slammed him to the ground? What

were the officers saying to each other before and immediately after they

slammed him to the ground? What was the reaction of everyone else in the

lobby?  What *actually happened* that prompted this violent incident that

obviously resulted in Joseph's death? Because the only evidence in the

summary-judgment record cannot answer this fundamental question, it does

not conclusively establish that the individual Defendants did not engage in a

constitutional violation, nor does it conclusively establish that their actions

were objectively reasonable. And because the law is clearly established that

"a police officer uses excessive force when the officer… violently slams a

suspect who is not resisting arrest,"[58] this Court cannot grant the individual

Defendants' motion for summary judgment on this basis.

---

[58] *Darden*, 880 F.3d at 725, 731–732.

**B.      The individual Defendants are not entitled to summary judgment on the basis that Plaintiffs have insufficient evidence of causation.**

Although not directly stated in a heading in their motion, Defendants suggest at the conclusion of section 1-A that Plaintiffs cannot prevail on a civil-rights claim against them unless Joseph's injury resulted "directly and only" from their actions.[59] To the extent that the individual Defendants are arguing that their actions must be the sole proximate cause of Joseph's death, this assertion is plainly wrong, and has not only been rejected by the Fifth Circuit, but also by its own Pattern Jury Instruction committee.

Once again, in *Darden*, the Fifth Circuit squarely addressed this issue. In *Darden*, one of the issues before the court was whether police officers who tased a morbidly obese man could be liable under section 1983 when there was evidence in the record of preexisting medical conditions. The Fifth Circuit answered with an emphatic "yes":

> The district court's conclusion that the injury did not result directly and only from the use of force was essentially based on the fact that Darden had preexisting medical conditions that increased his risk of death during the incident. The district court erred in reaching this conclusion. According to the eggshell skull rule, "a tortfeasor takes his victim as he finds him." The eggshell skull rule is applicable in § 1983 excessive force cases. Darden's preexisting medical conditions increased his risk of death during a struggle, and in that way, they

---

[59] Docket No. 41, PageID 287.

contributed to his death. However, the evidence suggests that Darden would not have suffered a heart attack and died if the officers had not tased him, forced him onto his stomach, and applied pressure to his back. Indeed, the medical expert ultimately concluded that "Darden′s manner of death should not have been ruled as Natural." Accordingly, the plaintiff can show that the use of force was the direct and only cause of Darden′s death.[60]

The same result should follow here. Once again, Defendants' own motion concedes that "the Medical Examiner concluded that [Joseph] died as a result of the combined toxic effects of cocaine and methamphetamine" and that "these effects were compounded by hypertensive cardiovascular disease *and the physiologic stress associated with a struggle and restraint by police*."[61] Moreover, the Officers conveniently omit perhaps the most important conclusion in the autopsy report, namely:

Due to the temporal relationship between the struggle, restraint and his collapse, **the manner of death is homicide**.[62]

This evidence presents—at the very least—a genuine factual dispute on the element of causation.

---

[60] *Darden*, 880 F.3d at 728 (citing *Dunn v. Denk*, 54 F.3d 248, 251 (5th Cir. 1995), *rev'd on other grounds* 79 F.3d 401 (5th Cir. 1996) (en banc)).

[61] Docket No. 5, PageID 37 (citing Docket No. 5-1, PageID 59) (emphasis added).

[62] Docket No. 5-1, PageID 59 (emphasis added).

Notably, the holding in *Darden* is hardly a break with Fifth Circuit precedent; it is also consistent with statements in its own pattern jury instructions. In its note to the liability instructions for excessive-force cases, the Court explains why it specifically rejected including the word "only" on the causation element. In sum, although the Fifth Circuit acknowledged that its opinions have routinely stated that "the injury must result "directly *and only*" from the use of excessive force, it further explained:

> Despite this history, the Committee omitted the word "only" because the language does not carry the meaning that a lay juror would give it. In *Dunn v. Denk*, the Fifth Circuit explained that the "direct- and-only" language was not meant to suggest that a plaintiff who was uniquely susceptible to injury could not recover. The court explained that [this] language merely establishes that "compensation be for an injury caused by the excessive force and not a reasonable force."[63]

In light of these clear commands from the Fifth Circuit, this Court should not be persuaded by any of the Defendants' attempt to argue that Plaintiff's claims are barred by his preexisting medical conditions.

In sum, because the individual Defendants have not conclusively established that they are entitled to summary judgment on any of the grounds that could potentially be divined from their amended motion to

---

[63] 5th Cir. PJI 10.1 at 90–91 (2014 ed.).

dismiss, this Court should deny the converted motion and allow Plaintiffs to pursue discovery for an eventual trial by jury.

## Response to Dallas County's Amended Motion to Dismiss

The fact that this case arises out of a suit against a government entity does not affect the standard of review for a motion to dismiss based on a plaintiff's alleged failure to state a claim upon which relief can be granted. This Court must continue to apply all the traditional rules that favor plaintiffs on motions to dismiss: it cannot look beyond the pleadings, must accept the allegations in the complaint as true, and must view them in the light most favorable to the plaintiff.[64] Not surprisingly, therefore, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted.[65]

In sum, Plaintiffs are merely required to state a claim to relief that is "plausible on its face."[66] The Supreme Court has held that the *plausibility*

---

[64] *See, e.g.*, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[65] *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

[66] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007)).

requirement does not require the plaintiff to show a greater *probability* of success than the defendant at the pleading stage; it simply requires the plaintiff to "raise a reasonable expectation that discovery will reveal evidence to support the allegation."[67] Or, as the Seventh Circuit noted in its 2010 opinion in *Swanson v. Citibank, N.A.*:

> As we understand it, the Court is saying [in *Iqbal* and *Twombly*] that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen.[68]

Finally, the Fifth Circuit has held that an allegation is plausible if "reasonable minds can differ" as to its veracity.[69] Put otherwise, a factual allegation is only inadequate if *no reasonable person* could believe it. Because the allegations in Plaintiffs' complaint provide *much* more than "a formulaic recitation of the elements of the cause of action,"[70] the Officers' tacit assertions to the contrary should fall on deaf ears, and this Court should deny their motion to dismiss on this basis.

---

[67] *Twombly*, 550 U.S. at 556.

[68] *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

[69] *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009).

[70] *Iqbal*, 556 U.S. at 678.

**A.**     **Plaintiff has alleged sufficient facts to demonstrate what is already established as a matter of law: The Dallas County Sheriff is the policymaker for the Dallas County jail.**

This Court can easily reject the County's argument that Plaintiffs "failed to allege sufficient facts to show an alleged Dallas County policymaker promulgated or ratified an unconstitutional policy." As the Fifth Circuit noted in its 1990 opinion in *Turner v. Upton County, Texas*, "It has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement."[71] In accordance with that well-established rule, Plaintiffs alleged numerous topics on which the Sheriff's Department is supposed to provide training, but has failed to do so.[72]

Although Plaintiffs concede that there is not a paragraph in their amended complaint that affirmatively states, "the Dallas County Sheriff is the policymaker for the Dallas County Jail," such "magic language" does not need to be included in a complaint if it could be reasonably inferred from the facts alleged. In *Groden v. City of Dallas, Texas*, the Fifth Circuit held that "a plaintiff is not required to single out the specific policymaker in his

---

[71] *Turner v. Upton County, Tex.*, 915 F.2d 133, 136 (5th Cir. 1990).

[72] Docket No. 40, pp. 10–12; 16–18.

complaint; instead, a plaintiff need only plead *facts* that show that the

defendant or defendants acted pursuant to a specific official policy, which

was promulgated or ratified by the legally authorized policymaker."[73] This is

because "the specific identity of the policymaker is a legal question that need

not be pled."[74]

The County's attempt to analogize this case to the facts in Magistrate

Judge Ramirez's opinion last year in *Jones v. City of Mesquite* are

unpersuasive. As the County noted in its motion, the plaintiff in *Jones*

"failed to plead *any* facts concerning *any* actions by *any* alleged policymaker

to ratify or promulgate *any* policy."[75] Here, by contrast, Plaintiffs identified

several policies stated within the Dallas County Sheriff's Department's

General Orders.[76] One of them is a policy to "instruct law enforcement and

detention personnel that after suspects are handcuffed, they should be sat

upright or placed on their side to prevent what is known as "positional

---

[73] *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 282 (5th Cir. 2016).

[74] *Groden*, 826 F.3d at 284.

[75] Docket No. 41, PageID 293 (citing *Jones v. City of Mesquite*, No. 3:18-CV-0117-B , 2018 WL 3853714 (N. D. Tex. July 25, 2018), *adopted by*, 2018 WL 3845415 (N.D. Tex. Aug. 13, 2018) (emphasis added).

[76] Docket No. 40, pp. 10–12.

asphyxia," as well as to avoid "hog-tying" suspects.[77] Plaintiffs also alleged

that the individual Defendants either violated these policies or tolerated their

co-defendants' violation of them, with no apparent concern that what they

were doing was wrong.[78]  Because the Dallas County Sheriff is, as a matter of

law, the County's final policymaker on law-enforcement issues (including

training officers), "a reasonable inference is that the policymaker

promulgated or ratified an unconstitutional policy"[79] of allowing untrained

officers (or officers who *were* trained but did not retain or follow the

information received in their training) to remain on duty.

In *Bell v. Liberty County*, Judge Hartfield in the Eastern District of

Texas concluded that a plaintiff *may* prove deliberate or conscious

indifference through the very types of allegations that Plaintiffs have alleged

here:

> In failure to train cases, the plaintiff can prove the existence of a
> custom or policy of deliberate indifference to individual's rights
> in two ways. First, he can show that a municipality deliberately
> or consciously chose not to train its officers despite being on
> notice that its current training regimen had failed to prevent
> tortious conduct by its officers. **Second, under the "single**

---

[77] Docket No. 40, p. 11.

[78] Docket No. 40, pp. 8–10.

[79] *See Jones*, 2018 WL 3853714, at *4.

> **incident exception," a single violation of federal rights may be sufficient to prove deliberate indifference.** The single incident exception requires proof of the possibility of recurring situations that present an obvious violation of constitutional rights and the need for additional or different training.[80]

And while Plaintiffs acknowledge that the Fifth Circuit has held that it is rare for claimants to *prevail* on this theory *at trial*, Plaintiffs are not required to prove their case at this stage of the proceeding.

As such, dismissal is not appropriate on this basis.

## B.   Plaintiff pleaded sufficient allegations regarding The County's failure to train its jail personnel.

The County's argument in section 2-B is a straw-man argument premised on its representation that Plaintiffs are seeking damages for negligence or on a respondeat superior theory. They are not. A cursory review of Plaintiffs' amended complaint reveals that they are alleging that The County was deliberately indifferent to a known or obvious risk.[81] Although the County suggests that the Supreme Court's 1989 opinion in *City of Canton, Ohio v. Harris* supports their argument, it does not. The relevant portion of *Harris* is as follows:

---

[80] *Bell v. Liberty County, Tex.*, No. 1:09-CV-766, 2011 WL 2358361, at *2 (E.D. Tex. June 14, 2011)).

[81] Docket No. 40, pp. 16–17.

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that **in light of the duties assigned to specific officers or employees**, **the need for more or different training is so obvious and the inadequacy so likely to result in the violation of constitutional rights**, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.[82]

Here, Plaintiffs alleged that the County undertook the obligation to train its law-enforcement personnel about not (a) hitting people in the head or neck; (b) allowing handcuffed suspects to die of positional asphyxia; (c) engaging in practices like "hog-tying" that have been banned nationally; and (d) further engaging psychotic or drug-induced suspects.[83] Plaintiffs further alleged that *four* of its law enforcement personnel engaged in such practices simultaneously on Joseph, in complete oblivion to the fact that they—or their co-defendant—were doing anything wrong.[84] If all of these facts are accepted as true, and read in a light most favorable to Plaintiffs, it certainly

---

[82] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

[83] Docket No. 40, pp. 10–11.

[84] Docket No 40, pp. 3–10.

allows this Court "to infer more than the possibility of misconduct."[85] The only other authority on which the County relies is *Jones* which, for reasons discussed above, is distinguishable on its facts.

Moreover, the County's tacit suggestion that Plaintiffs are required to plead intricate facts about the County's policies is also incorrect. Five years ago, in *Johnson v. City of Shelby*, the Supreme Court reaffirmed the well-established rule that "a federal court may *not* apply a standard more stringent than the usual pleading requirements of Rule 8(a) in cases alleging municipal liability."[86] And in 2011, Judge Keith Ellison in the Southern District of Texas discussed the plaintiff's pleading burden in *Thomas v. City of Galveston*, a case that also involved allegations of federal civil-rights violations against a municipality.[87] There, he noted:

> Only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general. Even general facts which point to prior violations by the police department would allow the plaintiffs to survive the motion to dismiss

---

[85] *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011) (Ellison, J.).

[86] *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)).

[87] *Thomas*, 800 F. Supp. 2d at 843.

phase.[88]

Accordingly, allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others,[89] **multiple harms that occurred to the plaintiff himself,[90]** misconduct that occurred in the open,[91] **the involvement of multiple officials in the misconduct,[92]** or the specific topic of the challenged policy or training inadequacy.[93] Such allegations—

---

[88] *Thomas*, 800 F. Supp. 2d at 843 (citing *Hobart v. City of Stafford*, No. 4:09-cv-3332, 2010 WL 3894112, at *5 (S.D. Tex. Sept. 29, 2010) (Ellison, J.).

[89] *Thomas*, 800 F. Supp. 2d at 843 n.11 (citing *Oporto v. City of El Paso*, No. EP-10-CV-110, 2010 WL 3503457, at *8 (W.D. Tex. Sept. 2, 2010) (refusing to dismiss a failure-to-train claim where plaintiffs alleged thirty-two prior incidents of officers using excessive deadly force); *Sagan v. Sumner County Board of Educ.*, 726 F. Supp. 2d 868, 887 (M.D. Tenn. 2010) (refusing to dismiss a failure-to-train claim where plaintiff alleged that abuse by teacher had occurred numerous times over the course of more than one academic year).

[90] *Thomas*, 800 F. Supp. 2d at 843 n.12 (citing *Greenwood v. City of Yoakum*, No. V-07-78, 2008 WL 4615779, at *4 (S.D. Tex. Oct. 17, 2008) (refusing to dismiss a failure-to-train claim where plaintiff reported that he had been wrongfully mistreated by officers in the past); *Michael v. County of Nassau*, No. 09-CV-5200, 2010 WL 3237143, at *4 (E.D.N.Y. Aug. 11, 2010) (refusing to dismiss failure-to-train claim in part because plaintiff alleged he had faced multiple incidents of misconduct over a long, continuous time period).

[91] *Thomas*, 800 F. Supp. 2d at 843 n.13 (citing *Michael*, 2010 WL 3237143, at *4 ("the fact that so much of this happened at headquarters, including in a public hallway, suggests that the officers involved did not fear supervisory personnel observing their conduct, intervening to stop them, or subjecting them to disciplinary action for their misdeeds").

[92] *Thomas*, 800 F. Supp. 2d at 843 n.14 (citing *Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 38 (D.D.C. 2010) ("number of officers involved," among other things, made failure to train claim plausible); *Michael*, 2010 WL 3237143, at *4 (same).

[93] *Thomas*, 800 F. Supp. 2d at 843 n.15 (citing *Hobart*, 784 F. Supp. 2d at 752 (refusing to dismiss custom-or-practice claim where plaintiffs "point[ed] to a specific type of training they allege that Stafford applies—the 'action/reaction motive'—and allege[d] specifically that officers are trained to use deadly force 'as a first resort' and 'before a person has a chance to act' "); *Robinson v. District of Columbia*, 736 F. Supp. 2d 254, 265 (D.D.C.

"or any other minimal elaboration a plaintiff can provide"—satisfy the requirement of providing (a) fair notice of the nature of the claim and the grounds on which the claim rests; and (b) permits the court to infer more than the mere possibility of misconduct.[94] Because Plaintiffs allegations meet at least two of these criteria, dismissal is not appropriate.

The Supreme Court's holdings in *Iqbal* and *Twombly* also fail to support the County's argument that Plaintiff's' allegations were insufficient.[95] In its analysis of this argument, Plaintiff respectfully submits that the Court must acknowledge the context-specific factors that helped undermine the plausibility of the plaintiffs' allegations in both of those cases,

---

2010) (refusing to dismiss custom-or-practice claim where plaintiff "alleged a specific form of misconduct: intimidating and harassing motorcyclists by, inter alia, swerving into their lanes of traffic and causing them to fall or lose control of their vehicles"); *Evans v. City of Chicago*, No. 10-C-542, 2010 WL 3075651, at *2 (N.D. Ill. Aug. 5, 2010) (refusing to dismiss custom-or-practice claim where plaintiff "define[s] what the practice is—to conduct warrantless searches and make arrests without probable cause when investigating the use of deadly force by Chicago police officers—and what that policy is meant to accomplish—to produce evidence, without regard to its reliability, that exonerates the officer from allegations of wrongdoing in his use of deadly force."); *Robbins v. City of Miami Beach*, No. 09-20804-CIV, 2009 WL 3448192, at *2 (S.D. Fla. Oct. 26, 2009) (refusing to dismiss custom-or-practice claim where plaintiff alleged "that when incidents of excessive force are investigated, the investigation reports omit unfavorable evidence, exclude statements of non-police witnesses, and rely solely on the word of the police officers involved").

[94] *Thomas*, 800 F. Supp. 2d at 843

[95] Docket No. 12, pp. 4–5.

neither of which are present here. The relevant context in *Iqbal* included the potential for discovery about national-security matters, claims alleged against high-ranking officials who asserted immunity, and the September 11 attacks, which provided an obvious lawful explanation for the defendants' conduct.[96] The relevant context in *Twombly* included the telephone industry's monopolistic history, the prospect of a massive class action and extremely expensive discovery, and the fact that "the same actionable conduct alleged…had been held in some prior cases to be lawful behavior."[97] But here, the context is obviously different. There are no national-security implications; no high-ranking officials claiming immunity; no sweeping class allegations; and—most importantly—no cases holding that an "obvious lawful explanation" exists for jail staff to ignore the obvious medical needs of a disabled person, and to subject him to unreasonable physical abuse. Instead, this is the type of straightforward case in which it should "not be any more difficult…for plaintiffs to meet their burden than it was before the Court's recent decisions" in *Iqbal* and *Twombly*.[98] As Judge Ellison

---

[96] *Iqbal*, 556 U.S. at 682.

[97] *Twombly*, 550 U.S. at 567–69.

[98] *See Swanson*, 614 F.3d at 404.

recognized in *Thomas*:

> The concerns of protecting public servants from the 'concerns of litigation, including avoidance of disruptive discovery,' are not present in suits against municipalities. Moreover, municipal liability claims do not occur in a vacuum, but rather arise in the context of a plaintiff's specific allegations of misconduct by individual officials to which he was personally subjected.[99]

Accordingly, where—as here—a plaintiff provides more than a boilerplate recitation of the grounds for municipal liability, and instead makes some additional allegation to put the municipality on fair notice of the grounds for which it is being sued, municipalities must rely on summary judgment to weed out unmeritorious claims.[100] The same analysis applies here.

Finally, although Plaintiffs concede that they have not alleged a pattern of similar incidents, the County then alleges that the "single-incident exception" could not apply in this case because "Plaintiffs do not allege the County decided not to train an individual officer" or "provided no training whatsoever to the Officers."[101]  But that is exactly what Plaintiffs have

---

[99] *Thomas*, 800 F. Supp. 2d at 843 (citing *Leatherman*, 507 U.S. at 166 ("unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983"); *Owen v. City of Independence*, 445 U.S. 622, 635–657, (1980) (discussing lack of historical, statutory, or policy basis for municipal, as opposed to individual, qualified immunity).

[100] *Thomas*, 800 F. Supp. 2d at 844–45 (citing *Leatherman*, 507 U.S. at 166).

[101] Docket No. 41, PageID 296.

alleged in paragraph 5.21 of its amended complaint: "If Dallas County failed to train its law enforcement and detention personnel on the mandates discussed…above, it acted with deliberate indifference to Mr. Hutcheson's constitutionally protected rights, because the consequences of failing to provide such training are known or obvious."[102] The County cites no authority to suggest that this allegation is not sufficient at this stage of the proceedings. Accordingly, dismissal is also inappropriate on this basis.

## C.    Plaintiffs pleaded a direct causal connection between Joseph's death and the County's failure to train the individual Defendants.

Finally, the County's suggestion that that Plaintiffs "fail to connect the dots between any Dallas County policy, custom, and practice and Joseph's death" also ignores the allegations in Plaintiffs' amended complaint.

> But for Dallas County's failure to train law enforcement and detention personnel with mandates discussed in paragraphs 4.61 to 4.66, or alternatively, its failure to ensure that its officers understood these mandate they received, or alternatively, its failure to ensure that its officers complied with these mandates, directly caused (and was therefore a "moving force") of Joseph Hutcheson's death because, had they acted in accordance with these mandates, Joseph Hutcheson would not have suffered the

---

[102] Docket No 40, p. 16.

"physiologic stress associated with struggle and restraint,"
which the medical examiner identified as a cause of his death.[103]

Plaintiffs do not deny that their complaint contains the words "but for" in this paragraph. A close reading of the paragraph, however, reveals that Plaintiffs are not asking for a "regular negligence" causation standard, but rather, that the verb in the sentence is "caused," modified by the adverb "directly." Indeed, the words "but for" are a surplusage. Boiled down to its essence, Plaintiffs alleged in this paragraph that "Dallas County's failure to train…directly caused (and was therefore a "moving force") of Joseph Hutcheson's death."

In sum, the additional factual allegations referenced in this paragraph vitiate any argument that Plaintiffs' allegations are "conclusory" because, by definition, conclusory allegations are those for which no supporting grounds are offered,[104] and Plaintiffs have offered those grounds here. As this Court is certainly well-aware, at this stage of the proceeding, Plaintiffs are under no obligation to offer evidence in support of their allegations.[105] And if the

---

[103] Docket No. 40, p. 17.

[104] *See, e.g.*, *Okonkwo v. City of Garland, Tex.*, No. 3:01-CV-1938-L, 2002 WL 432951, at *3 (N.D. Tex. Mar. 18, 2002) (Lindsay, J.).

[105] *Lewis v. Dallas County*, No. 3:15-cv-04014-L (N.D. Tex. Mar. 8, 2017) (Lindsay, J.).

allegations about the individual Defendants' acts and omissions are accepted as true (as the standard of review requires), the allegation that the absence of such training was a direct cause of Joseph's death is plausible. Because Plaintiffs have presented a "story that holds together," the County's motion to dismiss should be denied.[106]

**D.    Even if this Court were to find a deficiency in Plaintiffs complaint, dismissal is not appropriate without first affording Plaintiffs an opportunity to replead.**

If this Court were to conclude that Plaintiffs failed to plead their claims with sufficient detail, Plaintiffs respectfully request an opportunity to replead before this Court enters an order of dismissal. Such is the usual custom in the Fifth Circuit, unless it appears that the plaintiff has pleaded his or her "best case."[107] Here, the Defendants' motion to dismiss is not predicated on Plaintiff's attempt to assert a non-existent cause of action or a claim that is procedurally barred; instead, the County merely alleges that the allegations in the pleadings are inadequate. Assuming—without conceding—

---

[106] *Swanson*, 614 F.3d at 404.

[107] *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) (leave to amend should be freely given); *Swidriski v. City of Houston*, 31 F. App'x 154 (5th Cir. 2001) (citing *Waste Control Spec., L.L.C. v. Envirocare of Tex., Inc.*, 199 F.3d 781, 786 (5th Cir. 2000); *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

that the County is correct, if Plaintiffs' allegations were not sufficient to provide notice of his claim, it logically follows that Plaintiffs did not allege their "best case."

In sum, as the Supreme Court held nearly sixty years ago in *Conley v. Gibson*, "the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."[108] Although *Conley* no longer provides the substantive standard for evaluating the sufficiency of a party's pleadings, this principle of notice pleading has not been abrogated.[109] Accordingly, if this Court finds a deficiency with Plaintiffs' allegations on one or more of their causes of action, Plaintiffs respectfully request an opportunity to replead their claims in accordance with this Court's instructions.

## Conclusion and Prayer

This Court should deny the individual Defendants' converted motion for summary judgment, as well as the County's motion to dismiss, and grant Plaintiffs all other relief to which they are entitled.

---

[108] *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

[109] *See, e.g.*, *Painter Family Investments, LTD., L.L.P. v. Underwriters at Lloyds*, 836 F. Supp. 2d 484, 500 (S.D. Tex. 2011).

Respectfully submitted,

/s/ Matthew J. Kita
MATTHEW J. KITA
Texas Bar No. 24050883
P.O. Box 5119
Dallas, Texas 75208
(214) 699-1863
matt@mattkita.com

SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721
15455 Dallas Parkway, Suite 540
Dallas, Texas 75001
(214) 987-4100
scott@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2018, I served a copy of this document on all counsel of record in accordance with Federal Rule of Civil Procedure 5 and this Court's Local Rules.

/s/ Matthew J. Kita
MATTHEW J. KITA